## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LEAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:20-cv-00917-AVC |
| | ) | |
| v. | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| TWIN CITY FIRE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TWIN CITY FIRE <u>INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS</u>

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF FACTS ................................................................................. 3

       A.     The Policy ................................................................................................ 3

       B.     Plaintiff's Allegations ............................................................................. 4

III.   LEGAL STANDARDS ..................................................................................... 5

       A.     Standard for Entering Judgment on the Pleadings Under Fed. R. Civ. P. 12(c) ..... 5

       B.     Choice of Law ......................................................................................... 7

       C.     Contract Interpretation – Unambiguous Language Controls ................... 7

IV.    ARGUMENT ..................................................................................................... 8

       A.     The Virus Exclusion Bars Coverage ...................................................... 8

              1.     The Governmental Orders Aimed at Slowing the Spread of the
                     Coronavirus Do Not Impact the Applicability of the Virus Exclusion ..... 12

              2.     Regulatory Estoppel Does Not Impact the Applicability of the Virus
                     Exclusion .................................................................................... 16

       B.     Plaintiff Has Not Alleged "Direct Physical Loss" to Property ............................ 19

       C.     Plaintiff Cannot State a Claim for Civil Authority Coverage .............................. 26

       D.     Plaintiff Cannot State a Claim for Dependent Properties Coverage .................... 30

       E.     Because There is No Coverage Under the Policy, Plaintiff's Claims Fail as a
              Matter of Law ...................................................................................... 31

V.     CONCLUSION ................................................................................................ 31

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                         **Page(s)**

*10E, LLC v. Travelers Indem. Co. of Conn.*,
   483 F. Supp. 3d 828 (C.D. Cal. 2020) ................................................................................27

*1210 McGavock St. Hosp. Partners, LLC v. Admiral Indem. Co.*,
   No. 3:20-CV-694, 2020 WL 7641184 (M.D. Tenn. Dec. 23, 2020) ......................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................................6, 25

*ATCM Optical, Inc. v. Twin City Fire Ins. Co.*,
   No. 20-4238, 2021 WL 131282 (E.D. Pa. Jan. 14, 2021), *appeal filed*, 21-
   1107 (3d Cir. Jan. 21, 2021) ................................................................................................19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................................25

*Border Chicken AZ LLC v. Nationwide Mut. Ins. Co.*,
   No. CV-20-00785-PHX-JJT, 2020 WL 6827742 (D. Ariz. Nov. 20, 2020) ....................15, 17

*Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*,
   No. 20-3198, 2020 WL 6545893 (E.D. Pa. Nov. 6, 2020) .........................................18, 19, 24

*Bridal Expressions LLC v. Owners Ins. Co.*,
   No. 1:20 CV 833, 2021 WL 1232399 (N.D. Ohio Mar. 23, 2021)...................................20, 23

*Brunswick Panini's v. Zurich Am. Ins. Co.*,
   No. 1:20-cv-1895, 2021 WL 663675 (N.D. Ohio Feb. 19, 2021), *appeal filed*,
   No. 21-3222 (6th Cir. Mar. 9, 2021)...................................................................10, 20, 23, 25

*Buell Indus., Inc. v. Greater N. Y. Mut. Ins. Co.*,
   791 A.2d 489 (Conn. 2002) .................................................................................................17

*Calhoun v. Providence Mut. Fire Ins. Co.*,
   204 F. Supp. 3d 436 (D. Conn. 2016)..................................................................................11

*Ceres Enters., LLC v. Travelers Ins. Co.*,
   No. 1:20-cv-1925, 2021 WL 634982 (N.D. Ohio Feb. 18, 2021), *appeal filed*,
   No. 21-3230 (6th Cir. Mar. 10, 2021)............................................................. *passim*

*Chief of Staff LLC v. Hiscox Ins. Co.*,
   No. 1:20-cv-03169, 2021 WL 1208969 (N.D. Ill. Mar. 31, 2021) .........................................23

*Cincinnati Indemn. Co. v. Martin*,
   710 N.E.2d 677 (Ohio 1999)..................................................................................................8

*Colgan v. Sentinel Ins. Co., Ltd.*,
  No. 20-cv-04780-HSG, 2021 WL 472964 (N.D. Cal. Jan. 26, 2021), *appeal filed*, No. 21-15332 (9th Cir. Feb. 25, 2021) ........................................................21

*Commstop v. Travelers Indem. Co. of Conn.*,
  No. 11-1257, 2012 WL 1883461 (W.D. La. May 17, 2012) ...................................29

*Dakota Girls, LLC v. Philadelphia Indem. Co.*,
  No. 2:20-cv-2035, 2021 WL 858489 (S.D. Ohio Mar. 8, 2021) ..........................20, 21, 23, 25

*Delaware Valley Plumbing Supply, Inc. v. Merchants Mut. Ins. Co.*,
  No. 120CV08257NLHKMW, 2021 WL 567994 (D.N.J. Feb. 16, 2021) ........................18, 19

*Diesel Barbershop, LLC v. State Farm Lloyds*,
  479 F. Supp. 3d 353 (W.D. Tex. 2020).............................................................12, 24

*England v. Amica Mut. Ins. Co.*,
  No. 3:16-cv-1951 (MPS), 2017 WL 3996394 (D. Conn. Sept. 11, 2017)...............................23

*Equity Planning Corp. v. Westfield Ins. Co.*,
  No. 1:20-CV-1204, 2021 WL 766802 (N.D. Ohio Feb. 26, 2021), *appeal filed*,
  No. 21-329 (6th Cir. Mar. 10, 2021).......................................................10, 12, 20, 23

*Eye Care Ctr. of NJ, PA v. Twin City Fire Ins. Co.*,
  Civ. No. 20-05743 (KM) (ESK), 2021 WL 457890 (D.N.J. Feb. 8, 2021) ...........................11

*Eye Specialists of Del. v. Harleysville Worchester Ins. Co.*,
  No. 20 CV 6386, 2021 WL 506270 (Ohio Com. Pl. Franklin Cty. Feb. 1,
  2021) ....................................................................................................10, 12

*Family Tacos, LLC v. Auto Owners Ins. Co.*,
  No. 5:20-CV-01922, 2021 WL 615307 (N.D. Ohio Feb. 17, 2021)................................ *passim*

*Ferber v. Travelers Corp.*,
  802 F. Supp. 698 (D. Conn. 1992)...............................................................................6

*First State Ins. Co. v. Am. Home Assurance Co.*,
  463 F. Supp. 3d 298 (D. Conn. 2020).......................................................................1, 7, 27

*Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*,
  488 F. Supp. 3d 904(N.D. Cal. 2020) ....................................................................11, 12, 15

*Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*,
  No. 20-cv-04434-JSC, 2020 WL 7342687 (N.D. Cal. Dec. 14, 2020)...................................17

*Front Row Theatre, Inc. v. Am. Mfr's. Mut. Ins. Companies*,
  18 F.3d 1343 (6th Cir. 1994) ..................................................................................13

*Gomolka v. State Auto. Mut. Ins. Co.*,
    436 N.E.2d 1347 (Ohio 1982)........................................................................7

*Greystone Cmty. Reinvestment Ass'n, Inc. v. Berean Capital, Inc.*,
    638 F. Supp. 2d 278 (D. Conn. 2009)...........................................................7

*Hammer v. Lumberman's Mut. Cas. Co.*,
    573 A.2d 699 (Conn. 1990) ...........................................................................8

*Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Corp.*,
    486 S.E.2d 249 (N.C. Ct. App. 1997) ..........................................................21

*Hartman v. Erie Ins. Co.*,
    85 N.E.3d 454 (Ohio Ct. App. 2017).............................................................13

*Henderson Road Rest. Sys. Inc. v. Zurich Am. Ins. Co.*,
    No. 1:20 CV 1239, 2021 WL 168422 (N.D. Ohio Jan. 19, 2021)..............22, 23

*Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*,
    No. 1:20-cv-2939-TWT, 2020 WL 5938755 (N.D. Ga. Oct. 6, 2020), *appeal
    filed,* No. 20-14156 (11th Cir. Nov. 4, 2020) ............................................24, 28

*Heyman Assocs. No. 1 v. Ins. Co. of Pa.*,
    653 A.2d 122 (Conn. 1995) ...........................................................................10

*Hillcrest Optical, Inc. v. Cont'l Cas. Co.*,
    No. 1:20-CV-275-JB-B, 2020 WL 6163142 (S.D. Ala. Oct. 21, 2020) ..............24

*Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London*,
    No. 8:20-cv-1605-T-30AEP, 2020 WL 5791583 (M.D. Fla. Sept. 28, 2020)........24

*Kahn v. Pa. Nat'l Mut. Cas. Ins. Co.*,
    No. 1:20-cv-781, 2021 WL 422607 (M.D. Pa. Feb. 8, 2021)...........................22

*Karmel Davis & Assocs., Attorneys-At-Law, LLC v. Hartford Fin. Servs. Grp.,
    Inc.*,
    No. 1:20-CV-02181-WMR, 2021 WL 420372 (N.D. Ga. Jan. 26, 2021) ..............31

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins.
    Co. of Hartford*,
    No. 06-770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007)...........................29

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*,
    440 F. Supp. 3d 520 (D.S.C. 2020)................................................................30

*Kenneth Seifert d/b/a The Hair Place v. IMT Ins. Co.*,
    No. 20-cv-1102, 2020 WL 6120002 (D. Minn. Oct. 16, 2020).....................14, 24

iv

*Kevin Barry Fine Art Associates v. Sentinel Ins. Co.*,
20-cv-04783-SK, 2021 WL 141180 (N.D. Cal. Jan. 13, 2021) .........................................21, 29

*Kirsch v. Aspen Am. Ins. Co.*,
No. 20-11930, 2020 WL 7338570 (E.D. Mich. Dec. 14, 2020), *appeal filed*,
No. 21-1038 (6th Cir. Jan. 14, 2021) ....................................................................................29

*L-7 Designs, Inc. v. Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011)....................................................................................................6

*Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.*,
84 A.3d 1167 (Conn. 2014) ....................................................................................................8

*Linemaster Switch Corp. v. Aetna Life & Cas. Corp.*,
No. CV91-0396432S, 1995 WL 462270 (Conn. Super. Ct. July 25, 1995) ...........................17

*LJ New Haven LLC v. AmGuard Insurance Co.*,
No. 3:20-cv-00751-MPS, 2020 WL 7495622 (D. Conn. Dec. 21, 2020)........................10, 14

*M & M Metals Int'l., Inc. v. Cont'l Cas. Co.*,
Nos. C-060551, C-060571, 2008 WL 683970 (Ohio Ct. App. Mar. 14, 2008)......................17

*Malaube, LLC v. Greenwich Ins. Co.*,
No. 20-22615-CIV, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) .........................................24

*Mama Jo's, Inc. v. Sparta Ins. Co.*,
No. 17-cv-23362, 2018 WL 3412974 (S.D. Fla. June 11, 2018), *aff'd*, 823 F.
App'x 868 (11th Cir. 2020) ...................................................................................................25

*Martinez v. Allied Ins. Co. of Am.*,
483 F. Supp. 3d 1189 (M.D. Fla. 2020)...........................................................................12, 15

*Mazzarella v. Amica Mut. Ins. Co.*,
No. 3:17-CV-598 (SRU), 2018 WL 780217 (D. Conn. Feb. 8, 2018), *aff'd on
other grounds*, 774 Fed. App'x 14 (2d Cir. 2019) .................................................................23

*McKinley Dev. Leasing Co. v. Westfield Ins. Co.*,
No. 2020 CV 00815, 2021 WL 506266 (Ohio Com. Pl. Stark Cty. Feb. 9,
2021) .....................................................................................................................................22

*Michael Cetta, Inc. v. Admiral Indemnity Co.*,
No. 20 Civ. 4612 (JPC), 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020), *appeal
filed*, No. 21-57 (2d Cir. Jan. 11, 2021) ...............................................................................28

*Middlesex Ins. Co. v. Mara*,
699 F. Supp. 2d 439 (D. Conn. 2010).....................................................................................7

*Mikmar, Inc. v. Westfield Ins. Co.*,
   No. 5:20-CV-01313, 2021 WL 615304 (N.D. Ohio Feb. 17, 2021) ............................... *passim*

*Moody v. Hartford Fin. Serv. Group, Inc.*,
   No. 20-2856, 2021 WL 135897 (E.D. Pa. Jan. 14, 2021) ............................................14, 16, 19

*Motorists Mut. Ins. Co. v. Brickner*,
   Nos. 09AP-281, 9AP-282, 2009 WL 2940196 (Ohio Ct. App. Sep. 10, 2009) ........................7

*Mudpie, Inc. v. Travelers Cas. Ins. Co.*,
   No. 20-cv-03213-JST, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020) .................................29

*N&S Rest., LLC v. Cumberland Mut. Fire Ins. Co.*,
   No. 20-05289, 2020 WL 6501722 (D.N.J. Nov. 5, 2020) ......................................................14

*Nautilus Ins. Co. v. CT Painting LLC*,
   No. 3:16-CV-1793 (VLB), 2017 WL 9604616 (D. Conn. Dec. 29, 2017) ..............................6

*New London Cty. Mut. Ins. Co. v. Nantes*,
   36 A.3d 224 (Conn. 2012) ....................................................................................................10

*Newchops Rest. Comcast LLC v. Admiral Indem. Co.*,
   Nos. 20-cv-1889 & 20-cv-1869, 2020 WL 7395153 (E.D. Pa. Dec. 17, 2020) ....................16

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
   17 F. Supp. 3d 323 (S.D.N.Y. 2014).....................................................................................21

*Ohio State Bd. of Pharmacy v. Frantz*,
   555 N.E.2d 630 (Ohio 1990).................................................................................................18

*Oral Surgeons, P.C. v. Cincinnati Ins. Co.*,
   No. 4:20-CV-222-CRW-SBJ, 2020 WL 5820552 (S.D. Iowa Sept. 29, 2020),
   *appeal filed*, No. 20-3211 (8th Cir. Oct. 21, 2020)...............................................................24

*Paradies Shops, Inc. v. Hartford Fire Ins. Co.*,
   No. 1:03-CV-3154-JEC, 2004 WL 5704715 (N.D. Ga. Dec. 15, 2004)................................30

*Patel v. Contemporary Classics of Beverly Hills*,
   259 F.3d 123 (2d Cir. 2001)...................................................................................................6

*Phan v. Nationwide Gen. Ins. Co.*,
   No. CV 20-7616-MWF, 2021 WL 609845 (C.D. Cal. Feb. 1, 2021) ....................................12

*Philadelphia Parking Auth. v. Fed. Ins. Co.*,
   385 F. Supp. 2d 280 (S.D.N.Y. 2005)....................................................................................21

*Prime Alliance Grp., Ltd. v. Hartford Fire Ins. Co.*,
   No. 06-22535-CIV-UNGARO, 2007 WL 9703576 (S.D. Fla. Oct. 19, 2007)........................16

*Promotional Headwear Int'l v. Cincinnati Ins. Co.*,
  No. 20-cv-2211-JAR-GEB, 2020 WL 7078735 (D. Kan. Dec. 3, 2020), *appeal
  filed*, No. 21-3000 (10th Cir. Jan. 4, 2021)......................................................................25, 26

*Protégé Rest. Partners LLC v. Sentinel Ins. Co.*, *Ltd.*,
  No. 20-cv-03674-BLF, 2021 WL 428653 (N.D. Cal. Feb. 8, 2021) .....................................22

*Pure Fitness LLC v. Twin City Fire Ins. Co.*,
  2:20-CV-775-RDP, 2021 WL 512242 (N.D. Ala. Feb. 11, 2021)...........................................11

*Raymond H. Nahmad DDS PA v. Hartford Cas. Ins. Co.*,
  No. 1:20-cv-22833-BLOOM/Louis, 2020 WL 6392841 (S.D. Fla. Nov. 2,
  2020) ................................................................................................................... *passim*

*Real Hospitality, LLC v. Travelers Cas. Ins. Co. of Am.*,
  No. 20-cv-00087-KS-MTP, 2020 WL 6503405 (S.D. Miss. Nov. 4, 2020) ..........................24

*Reichhold Chems., Inc. v. Hartford Acc. & Indem. Co.*,
  703 A.2d 1132 (Conn. 1997) .....................................................................................................7

*Robert E. Levy, D.M.D., LLC v. Hartford Fin. Servs. Grp. Inc.*,
  No. 4:20-cv-00643-SRC, 2021 WL 598818 (E.D. Mo. Feb. 16, 2021), *appeal
  filed*, No. 21-1446 (8th Cir. Feb. 25, 2021) .........................................................11, 17, 19, 21

*Robert W. Fountain, Inc. v. Citizens Ins. Co.*,
  No. 20-cv-05441-CRB, 2020 WL 7247207 (N.D. Cal. Dec. 9, 2020), *appeal
  filed*, No. 21-15053 (9th Cir. Jan. 11, 2021)...........................................................................27

*Roberts v. Babkiewicz*,
  582 F.3d 418 (2d Cir. 2009).......................................................................................................6

*Ross v. Ohio Fair Plan Underwriting Assn*,
  No. 07 CA 000010, 2008 WL 2571848 (Ohio Ct. App. May 23, 2008) ...................................8

*Roy H. Johnson, DDS v. Hartford Fin. Servs. Grp., Inc.*,
  No. 1:20-cv-02000-SDG, 2021 WL 37573 (N.D. Ga. Jan. 4, 2021) ......................................29

*S. Hospitality, Inc. v. Zurich Am. Ins. Co.*,
  393 F.3d 1137 (10th Cir. 2004) ...............................................................................................28

*Sandy Point Dental, PC v. Cincinnati Ins. Co.*,
  No. 20 CV 2160, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020).......................................24, 28

*Santo's Italian Café LLC v. Acuity Ins. Co.*,
  No. 1:20-cv-01192, 2020 WL 7490095 (N.D. Ohio Dec. 21, 2020) .............................. *passim*

*SAS Int'l Ltd. v. General Star Indem. Co.*,
    No. CV 20-11864-RGS, 2021 WL 664043 (D. Mass. Feb. 19, 2021), *appeal
    filed*, No. 21-1219 (1st Cir. Mar. 24, 2021) ................................................................26

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*,
    No. 3:09-cv-02391, 2010 WL 2696782 (M.D. Pa. July 6, 2010) ...........................29

*Slekis v. Nat'l R.R. Passenger Corp.*,
    56 F. Supp. 2d 202 (D. Conn. 1999) ........................................................................7

*Syufy Enters. v. Home Ins. Co. of Indiana*,
    No. 94-0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995) ..........................29

*Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*,
    No. 1:20-CV-665-RP, 2021 WL 972878 (W.D. Tex. Jan. 21, 2021) .....................26

*Tralom, Inc. v. Beazley USA Services, Inc.*,
    No. CV 20-8344-JFW(RAOx), 2020 WL 8620224 (C.D. Cal. Dec. 29, 2020) .....21

*Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    484 F. Supp. 3d 492 (E.D. Mich. 2020)...................................................................24

*Ultimate Hearing Solutions II, LLC v. Twin City Fire Ins. Co.*,
    No. 20-2401, 2021 WL 131556 (E.D. Pa. Jan. 14, 2021).......................................14

*Uncork & Create LLC v. Cincinnati Ins. Co.*,
    No. 2:20-cv-00401, 2020 WL 6436948 (S.D. W.Va. Nov. 2, 2020)...........24, 25, 26

*Union Carbide Corp. v. City of Danbury*,
    778 A.2d 204 (Conn. 2001) .....................................................................................18

*United Air Lines v. Ins. Co. of the State of Pa.*,
    439 F.3d 128 (2d Cir. 2006).....................................................................................29

*Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co.*,
    No. 3:20-CV-01129-H-MDD, 2021 WL 242979 (S.D. Cal. Jan. 22, 2021),
    *appeal filed*, No. 21-55090 (9th Cir. Feb. 5, 2021) ..............................................26

*Valls v. Allstate Ins. Co.*,
    No. 3:16-CV-01310 (VAB), 2017 WL 4286301 (D. Conn. Sept. 27, 2017),
    *aff'd*, 919 F.3d 739 (2d Cir. 2019) .........................................................................31

*Van Natta v. Great Lakes Reins. (UK) SE*,
    No. 3:18-cv-438 (SRU), 2020 WL 5215461 (D. Conn. Sept. 1, 2020) ..................11

*W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*,
    No. 2:20-CV-05663-VAP-DFMx, 2020 WL 6440037 (C.D. Cal. Oct. 27,
    2020) ...................................................................................................................15, 25

*Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*,
    No. 20-cv-03750-WHO, 2020 WL 6562332 (N.D. Cal. Nov. 9, 2020) .................................25

*Wilson v. Hartford Cas. Co.*,
    No. CV 20-3384, 2020 WL 5820800 (E.D. Pa. Sept. 30, 2020), *appeal filed*,
    No. 20-3124 (3d Cir. Oct. 20, 2020) .....................................................................................11

**Rules**

Fed. R. Civ. P 12(c) ..............................................................................................................1, 5, 8

**Other Authorities**

Ohio Dep't of Health, Director's Stay at Home Order (Mar. 22, 2020),
    https://content.govdelivery.com/attachments/OHOOD/2020/03/22/file_attach
    ments/1407840/Stay%20Home%20Order.pdf.......................................................................28

Pursuant to Federal Rule of Civil Procedure 12(c), Defendant Twin City Fire Insurance Company ("Twin City" or "Defendant") respectfully submits this Memorandum of Law in Support of its Motion for Judgment on the Pleadings and requests that the Court enter judgment in its favor as to all claims against it in the Class Action Complaint ("Complaint") of Plaintiff Leal, Inc. ("Leal" or "Plaintiff").

## I.    INTRODUCTION

Plaintiff, the owner and operator of a boutique clothing store, seeks to recover from its property insurer, Twin City, for purported business losses caused by the COVID-19 pandemic and resulting governmental orders.  Plaintiff's insurance policy does not cover these losses for at least three reasons.

First, the policy does not cover losses caused by a virus.  Plaintiff's policy includes a "'Fungus', Wet Rot, Dry Rot, Bacteria or Virus" Exclusion ("Virus Exclusion") that states Twin City "will not pay for loss or damage caused directly or indirectly by . . . [p]resence, growth, proliferation, spread or any activity of . . . virus."  *See* Ex. A (the "Policy"), Form SS 40 93 07 05 at 1.[1]  The novel coronavirus (SARS-CoV-2) is a "virus" within the meaning of this exclusion, and it indisputably caused Plaintiff's purported business losses, either "directly or indirectly."  The Complaint makes that fact clear.  Plaintiff attributes its business losses to the coronavirus as well as the governmental orders designed to slow its spread.  *See* Compl. ¶¶ 40, 44, 45, 47.

Second, even if the Virus Exclusion did not apply, Plaintiff still would not be entitled to coverage because it fails to allege any direct physical loss or damage to property, which is required for all forms of coverage under the policy.  Plaintiff does not allege anything physical happened

---

[1] Citations in the form "Ex. __" refer to the exhibit to the accompanying declaration of Anthony Anscombe, dated April 7, 2021.

to its property at all; rather, it contends that the coronavirus and the resulting government orders caused damage to its property by "mandating that Plaintiff discontinue its primary use of the Covered Property as a clothing store." *Id.* ¶ 44. But the inability to use property for a particular purpose without any physical change to the property does not satisfy the policy's requirement of a direct physical loss or damage. Hundreds of courts across the country — including in Ohio where Plaintiff is located — have reached that exact conclusion.

Third, again assuming *arguendo* that the Virus Exclusion does not apply, Plaintiff is not entitled to "civil authority" coverage because it has not alleged facts showing that property "in the immediate area" of the insured premises experienced "direct physical loss," which caused "access to [the] 'scheduled premises' [to be] specifically prohibited by order of a civil authority." *See* Ex. A, Form SS 00 07 07 05 at 11. Plaintiff does not allege any specific harm to any property in the immediate area of the scheduled premises, and Plaintiff admits the governmental orders were issued to limit the spread of coronavirus, not because of property damage. Civil authority coverage simply does not apply where, as here, the orders were issued because of fear of future harm to people, not existing property damage.

Twin City does not dispute that stay-at-home orders and other measures to slow the spread of the novel coronavirus have upended lives and disrupted the economy. But even the unprecedented economic fallout from a global pandemic does not provide a basis to override the plain terms of an insurance contract. The Policy plainly does not cover Plaintiff's virus-related business losses. Accordingly, Twin City respectfully requests that the Court enter judgment in its favor on all counts.

## II.     STATEMENT OF FACTS

### A.     The Policy

Twin City issued a Spectrum Business Owner's Policy bearing policy number 33 SBA AD3737 SA to Plaintiff, with a policy period of June 17, 2019 through June 17, 2020 (the "Policy").  *See* Ex. A.  Subject to the Policy's terms, conditions, and exclusions, the Policy provides coverage for "direct physical loss of or physical damage to Covered Property at the premises . . . caused by or resulting from a Covered Cause of Loss."  *Id*., Form SS 00 07 07 05 at 1.  The Policy defines "Covered Causes of Loss" as "RISKS OF DIRECT PHYSICAL LOSS," unless the loss is specifically excluded or limited in certain other Policy provisions.  *Id*. at 2.

The Policy also supplies Business Income and Extra Expense coverage.  The Business Income portion of the Policy provides coverage "for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'."  *Id.* at 10. The Policy states that such suspension of operations "must be ***caused by direct physical loss of or physical damage*** to property at the 'scheduled premises' . . . ."  *Id.* (emphasis added). The Extra Expense portion of the Policy likewise requires a showing of "***direct physical loss or physical damage*** to property."  *Id.* (emphasis added).

The Policy provides coverage for Business Income from Dependent Properties, specifically for "actual loss of Business Income you sustain due to direct physical loss or physical damage at the premises of a dependent property caused by or resulting from a Covered Cause of Loss."  *Id*. at 11. "Dependent Property" is defined in the policy as "property owned, leased or operated by others whom you depend on to: (a) Deliver materials or services to you or to others for your account . . . (b) Accept your products or services; (c) Manufacture your products . . . (d) Attract customers to your business premises."  *Id*. at 12.

The Policy provides Civil Authority coverage on the following terms:

> This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a ***Covered Cause of Loss to property*** in the immediate area of your "scheduled Premises".

*Id.* at 11 (emphasis added).

The Policy expressly excludes loss or damage caused by a virus. The Virus Exclusion (contained in the "Limited Fungi, Bacteria or Virus Coverage" Endorsement) provides:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss: (1) Presence, growth, proliferation, spread or any activity of "fungi," wet rot, dry rot, bacteria or ***virus***.

*Id.*, Form SS 40 93 07 05 at 1 (emphasis added).[2]  The Virus Exclusion applies "whether or not the loss event results in widespread damage or affects a substantial area." *Id.*

### B.  Plaintiff's Allegations

Plaintiff Leal owns and operates a boutique clothing store located in the State of Ohio. Plaintiff alleges that "[a]t the direction of local, state, and/or federal authorities, Plaintiff was forced to temporarily close its retail clothing store beginning on March 23, 2020, causing an interruption to and loss of Plaintiff's business income." Compl. ¶ 2.  Plaintiff admits that the government-directed closure orders were issued "in response to the COVID-19 public health emergency." *Id.* ¶ 31; *see also id.* at 5 ("In Response to Covid-19, Ohio and Other State Governments Issue Sweeping Orders Shutting Down 'Non-Essential' Businesses").  Specifically, Plaintiff alleges that it was affected by the following governmental orders:

---

[2] The Virus Exclusion has two exceptions that do not apply here.  The two exceptions are (1) when the virus results from fire or lightning; or (2) when certain limited additional coverage is applicable.  *Id.*  The limited additional coverage is discussed in more detail below.  *See infra* section IV.A.1.

4

- "[O]n March 9, 2020, the Governor of Ohio, Mike DeWine, declared a 'State of Emergency' throughout the State of Ohio to control ingress and egress to and from property within the state and the movement of persons within it." *Id.* ¶ 31.

- "On March 22, 2020, the Director of the Ohio Department of Health issued an Order closing all non-essential businesses within the State of Ohio, including Plaintiff's business." *Id.* ¶ 32.

While Plaintiff acknowledges that the Policy requires it to demonstrate direct physical loss of or damage to covered property, Plaintiff does not allege that there is anything physically wrong with its property. Rather, Plaintiff asserts in conclusory fashion that "the COVID-19 pandemic and the ubiquitous nature of the COVID-19 virus caused a direct physical loss of or damage to Plaintiff's Covered Property." *Id.* ¶ 45. According to Plaintiff, "[p]hysical loss of, or physical damage to, property . . . occur[s] when a covered cause of loss threatens or renders property unusable or unsuitable for its intended purpose or unsafe for normal human occupancy and/or continued use." *Id.* ¶ 21. Plaintiff also argues that "[t]he closure of all 'non-life-sustaining businesses' evidences an awareness on the part of both state and local governments that COVID-19 causes loss of or damage to property." *Id.* ¶ 35. Plaintiff concedes that the Policy contains the Virus Exclusion, but asserts that (1) the Virus Exclusion does not preclude coverage, and (2) the Virus Exclusion should not apply due to regulatory estoppel. *Id.* ¶¶ 48-51.

The Complaint asserts a cause of action for a declaratory judgment that there is coverage for Plaintiff's losses (Count I) as well as a cause of action for breach of contract (Count II). *Id.* ¶¶ 70-91.

## III.    LEGAL STANDARDS

### A.    Standard for Entering Judgment on the Pleadings Under Fed. R. Civ. P. 12(c)

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard for granting a Rule 12(c)

motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim.  *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001). To survive a motion for judgment on the pleadings, a complaint must therefore "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id*. (quoting *Twombly*, 550 U.S. at 555).

On a motion for judgment on the pleadings, the court may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case."  *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009); *see L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (citation and internal quotation marks omitted)).   Under this rule, courts commonly consider insurance policies in deciding motions to dismiss cases arising from those policies.  *See, e.g.*, *Nautilus Ins. Co. v. CT Painting LLC*, No. 3:16-CV-1793 (VLB), 2017 WL 9604616, at *1 (D. Conn. Dec. 29, 2017).  Here, Plaintiff invokes the Policy (*see*, *e.g*., Compl. ¶ 16); hence it is appropriate for the Court to consider the Policy in ruling on this motion.   The Court may disregard any allegations in the Complaint that the actual terms of the Policy contradict. *See, e.g.*, *Ferber v. Travelers Corp.*, 802 F. Supp. 698, 702 (D. Conn. 1992).

**B.      Choice of Law**

In a diversity case, the forum state's choice of law rules govern.  *First State Ins. Co. v. Am. Home Assurance Co*., 463 F. Supp. 3d 298, 309 (D. Conn. 2020); *Slekis v. Nat'l R.R. Passenger Corp.*, 56 F. Supp. 2d 202, 204 (D. Conn. 1999).  "For issues of contract interpretation, Connecticut applies the test set forth in the Restatement (Second) of Conflicts of Law [] § 188, which, absent an effective choice of law by the parties, applies the law of the state with the 'most significant relationship' to the transaction and the parties."  *Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 445 (D. Conn. 2010) (citation omitted); *see Reichhold Chems., Inc. v. Hartford Acc. & Indem. Co.*, 703 A.2d 1132, 1138 (Conn. 1997).

The Policy here was issued to Plaintiff in Ohio covering premises located in Ohio, and no other state has a more significant relationship to the transaction and the parties.  Accordingly, under Connecticut's choice of law rules, Ohio law would apply to the interpretation of the Policy.  However, for purposes of this motion, there is no difference between Ohio and Connecticut law — both preclude coverage.  Only "actual" conflicts require the application of a forum state's choice of law rules.  *Greystone Cmty. Reinvestment Ass'n, Inc. v. Berean Capital, Inc.*, 638 F. Supp. 2d 278, 287 (D. Conn. 2009).  Therefore, the law of both states is addressed herein.

**C.      Contract Interpretation – Unambiguous Language Controls**

Under Ohio law, "interpretation of an insurance policy is a question of law."  *Motorists Mut. Ins. Co. v. Brickner*, Nos. 09AP-281, 9AP-282, 2009 WL 2940196, at *2 (Ohio Ct. App. Sep. 10, 2009) (citing *Blair v. Cincinnati Ins. Co.*, 836 N.E.2d 607, 610 (Ohio 2005)).  Like any contract, an insurance policy is subject to "the familiar rules of construction and interpretation applicable to contracts generally."  *Gomolka v. State Auto. Mut. Ins. Co.*, 436 N.E.2d 1347, 1348 (Ohio 1982).  "[W]ords and phrases used in an insurance policy must be given their natural and commonly accepted meaning."  *Id.*  "[W]hen the language in an insurance policy is clear and

unambiguous," Ohio courts "must enforce the contract as written . . ." *Cincinnati Indemn. Co. v. Martin*, 710 N.E.2d 677, 679 (Ohio 1999).  In construing clear language in insurance policy provisions, courts may not

> enlarg[e] the contract by implication in order to embrace an object distinct from that contemplated by the parties . . . nor read into the contract a meaning not placed there by an act of the parties . . . nor make a new contract for the parties where their unequivocal acts demonstrate an intention to the contrary.

*Ross v. Ohio Fair Plan Underwriting Assn*, No. 07 CA 000010, 2008 WL 2571848, at *3 (Ohio Ct. App. May 23, 2008) (internal citations and quotations omitted).

Likewise, under Connecticut law, "[w]hen interpreting [an insurance policy], [a court] must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." *Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.*, 84 A.3d 1167, 1173 (Conn. 2014).  "If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning." *Id.* (citation omitted). "[A]ny ambiguity in a contract must emanate from the language used in the contract rather than one party's subjective perception of the terms." *Id.* (citation omitted). "[A] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Id.* (citation omitted).  "A court cannot rewrite the policy of insurance or read into the insurance contract that which is not there." *Hammer v. Lumberman's Mut. Cas. Co.*, 573 A.2d 699, 707 (Conn. 1990).

Application of either state's standards to the claims at issue establishes that Twin City is entitled to judgment under Rule 12(c).

## IV.    ARGUMENT

### A.    The Virus Exclusion Bars Coverage

Plaintiff is not entitled to any relief in this action because its alleged losses fall squarely

within the Policy's Virus Exclusion, which applies to all coverages Plaintiff seeks.  *See* Ex. A at Form 40 93 07 05, at 1, Part A.2 (exclusion "added to . . . the Special Property Coverage Form"). The novel coronavirus (COVID-19) is a "virus."  And every loss for which Plaintiff seeks coverage was "caused directly or indirectly by . . . [p]resence, growth, proliferation, spread or any activity of" this virus.  *Id.* at 1, Part A.2.i.

Plaintiff alleges expressly and repeatedly that it has suffered losses stemming from the virus and the "global COVID-19 pandemic" as well as the government-mandated orders issued in response to the virus:

- "As a result of the orders governing Plaintiff, the Covered Property closed on March 23, 2020 and remained completely closed until May 12, 2020 at which time it has been able to resume significantly limited operations, which are well short of Plaintiff's normal operating environment."  Compl. ¶ 40.

- "Plaintiff's Covered Property suffered "direct physical loss or damage" due to the Ohio Executive Order (and other local governmental orders) mandating that Plaintiff discontinue its primary use of the Covered Property as a clothing store." *Id.* ¶ 44.

- "[T]he COVID-19 pandemic and the ubiquitous nature of the COVID-19 virus caused a direct physical loss of or damage to Plaintiff's Covered Property."  *Id.* ¶ 45.

- "Plaintiff's 'Dependent Property' suffered direct physical loss or damage (as a result of the governmental shutdown orders or, alternatively, the ubiquitous nature of the COVID-19 virus) resulting in lost business income to Plaintiff . . . . " *Id.* ¶ 47.

Plaintiff's allegations thus make clear that its claims fall squarely within the terms of the Policy's Virus Exclusion.

Several Ohio courts that have addressed the applicability of a substantially similar exclusion have held that the exclusion barred coverage for allegations of coronavirus-related losses.  *See Family Tacos, LLC v. Auto Owners Ins. Co.*, No. 5:20-CV-01922, 2021 WL 615307, at *10 (N.D. Ohio Feb. 17, 2021) ("Even if Plaintiff's claimed losses arose from governmental

action and not the virus itself, the virus exclusion applies to loss or damage caused 'directly or indirectly' by a virus."); *Mikmar, Inc. v. Westfield Ins. Co.*, No. 5:20-CV-01313, 2021 WL 615304, at *9 (N.D. Ohio Feb. 17, 2021) ("On its face, [the virus exclusion] excludes coverage for the lost use of their property Plaintiffs claim."); *Ceres Enters., LLC v. Travelers Ins. Co.*, No. 1:20-cv-1925, 2021 WL 634982 (N.D. Ohio Feb. 18, 2021) (dismissing complaint filed by owner of hotels located in Ohio and elsewhere due to, *inter alia*, failure to avoid the plain and unambiguous virus exclusion), *appeal filed*, No. 21-3230 (6th Cir. Mar. 10, 2021); *Brunswick Panini's v. Zurich Am. Ins. Co.*, No. 1:20-cv-1895, 2021 WL 663675, at *9 (N.D. Ohio Feb. 19, 2021) (applying a microorganism exclusion because COVID-19 is a virus as enumerated in the microorganism exclusion, and the orders closing indoor dining were issued as a result of the virus), *appeal filed*, No. 21-3222 (6th Cir. Mar. 9, 2021); *Eye Specialists of Del. v. Harleysville Worchester Ins. Co.*, No. 20 CV 6386, 2021 WL 506270, at *5 (Ohio Com. Pl. Franklin Cty. Feb. 1, 2021); *Santo's Italian Café LLC v. Acuity Ins. Co.*, No. 1:20-cv-01192, 2020 WL 7490095 (N.D. Ohio Dec. 21, 2020); *Equity Planning Corp. v. Westfield Ins. Co.*, No. 1:20-CV-1204, 2021 WL 766802 (N.D. Ohio Feb. 26, 2021), *appeal filed*, No. 21-329 (6th Cir. Mar. 10, 2021).

The only Connecticut court to have addressed the issue also held that a similar virus exclusion barred coverage for allegations of coronavirus-related loss of income or expense. The court in *LJ New Haven LLC v. AmGuard Insurance Co.*, No. 3:20-cv-00751-MPS, 2020 WL 7495622 (D. Conn. Dec. 21, 2020) concluded that the virus exclusion applied "as long as a virus acts as a link somewhere in the causal chain producing the loss or damage at issue," and found that "[t]hat formulation is easily satisfied in this case." *Id.* at *4.[3]

---

[3] Connecticut affords exclusionary provisions their "natural and ordinary meaning" and rejects any "forced construction" that "distort[s] that plain meaning." *Heyman Assocs. No. 1 v. Ins. Co. of Pa.*, 653 A.2d 122, 132 (Conn. 1995) (citation omitted) (declining to "look beyond the plain language to uncover an intended, yet unexpressed, limitation on the scope of the definition of 'pollutant'"); *New London Cty. Mut. Ins. Co. v. Nantes*, 36 A.3d 224, 236

These decisions are among a growing body of decisions nationwide holding that virus exclusions bar coverage for COVID-19 business interruption claims like those alleged here.  A myriad of courts have enforced the exact same exclusion as that contained in Plaintiff's policy here.  *See, e.g.*, *Robert E. Levy, D.M.D., LLC v. Hartford Fin. Servs. Grp. Inc.,* No. 4:20-cv-00643-SRC, 2021 WL 598818, at *5 (E.D. Mo. Feb. 16, 2021) ("Simply put, Plaintiffs allege their losses were caused by efforts to prevent the spread of COVID-19. The alleged losses fall squarely within the virus exclusion."), *appeal filed*, No. 21-1446 (8th Cir. Feb. 25, 2021); *Pure Fitness LLC v. Twin City Fire Ins. Co*., 2:20-CV-775-RDP, 2021 WL 512242, at *4 (N.D. Ala. Feb. 11, 2021) ("COVID-19, which was the root cause of Plaintiff's losses, is a virus.  The policy at issue in this case excludes coverage for losses caused, even in part, by a virus."); *Eye Care Ctr. of NJ, PA v. Twin City Fire Ins. Co*., Civ. No. 20-05743 (KM) (ESK), 2021 WL 457890, at *2 (D.N.J. Feb. 8, 2021) (same); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 488 F. Supp. 3d 904, 907(N.D. Cal. 2020) ("[A]s the loss was caused directly or indirectly by the virus, the Virus Exclusion applies under its plain and unambiguous language."); *Wilson v. Hartford Cas. Co.*, No. CV 20-3384, 2020 WL 5820800, at *7-8 (E.D. Pa. Sept. 30, 2020) (same), *appeal filed*, No. 20-3124 (3d Cir. Oct. 20, 2020); *Raymond H. Nahmad DDS PA v. Hartford Cas. Ins. Co*., No. 1:20-cv-22833-BLOOM/Louis, 2020 WL 6392841, at *9-10 (S.D. Fla. Nov. 2, 2020) (Virus Exclusion barred coverage of plaintiff's economic losses resulting from government closure orders that were "specifically enacted to address COVID-19 activity in Florida.").

---

n.14 (Conn. 2012) (rejecting argument that "language in an insurance policy exclusion must be interpreted more narrowly than identical language in a grant of coverage").  Courts in Connecticut do not hesitate to enforce, as a matter of law, exclusions applying to mold, fungi, and other microorganisms.  *See, e.g.*, *Van Natta v. Great Lakes Reins. (UK) SE*, No. 3:18-cv-438 (SRU), 2020 WL 5215461, at *1-2 (D. Conn. Sept. 1, 2020) (affirming grant of summary judgment to insurer based on "unambiguous, plain terms" of mold, mildew or fungi exclusion); *Calhoun v. Providence Mut. Fire Ins. Co.*, 204 F. Supp. 3d 436 (D. Conn. 2016) (enforcing terms of policy that excluded "[m]old, fungus or wet rot" from "Perils Insured Against").

The reasoning in these cases applies equally here.  Because Plaintiff's alleged business interruption claims were directly and indirectly caused by the coronavirus, the unambiguous terms of the Virus Exclusion bar coverage and the Court should enter judgment in Twin City's favor.

### 1.   The Governmental Orders Aimed at Slowing the Spread of the Coronavirus Do Not Impact the Applicability of the Virus Exclusion

Plaintiff cannot avoid the Virus Exclusion by claiming that its losses were caused by government orders that were put in place to slow the spread of the virus, rather than by the virus itself.

First, as noted above, the virus is the cause of Plaintiff's losses as the orders only exist because of the virus.  *See, e.g.*, *Equity Planning Corp.*, 2021 WL 766802, at *18 (finding "unavailing" the argument that "Ohio's Stay At Home Order" was the cause of loss "rather than the COVID-19 virus"); *Eye Specialists of Del.*, 2021 WL 506270, at *4 (finding "the COVID-19 virus is an actual cause of Plaintiff's claim for coverage" not the governmental order, as the order "was issued solely because of the serious public health threat posed by COVID19"); *Santo's*, 2020 WL 7490095 at *14 (virus is the cause of loss because "but for the presence and community spread of the COVID-19 virus throughout Ohio, the State of Ohio would not have issued its Closure Orders").[4]

But, even if the virus were just one cause of loss, the Virus Exclusion would still apply because it applies to losses caused "indirectly" by a virus "regardless of any other cause or event

---

[4] *See also, e.g.*, *Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F. Supp. 3d 353, 361 (W.D. Tex. 2020)  (granting dismissal based on a virus exclusion because "COVID is in fact the reason for the Orders being issued and the underlying cause of Plaintiffs' alleged losses" and enforcing an anti-concurrent causation clause); *Franklin EWC*, 488 F. Supp. 3d at 908 (concluding it was "[n]onsense" that the insured's loss was "created by the Closure Orders rather than the virus"); *Martinez v. Allied Ins. Co. of Am.*, 483 F. Supp. 3d 1189, 1191-92 (M.D. Fla. 2020) (claim for "loss of business income as a result of the Governor's executive order" was excluded because "[plaintiff's] damages resulted from COVID-19, which is clearly a virus."); *Phan v. Nationwide Gen. Ins. Co.*, No. CV 20-7616-MWF (JPRx), 2021 WL 609845, at *3 (C.D. Cal. Feb. 1, 2021) ("Because Plaintiff's loss arises from the coronavirus pandemic and resulting Public Orders, the Virus Exclusion applies on its face.").

that contributes concurrently or in any sequence to the loss." Ex. A, Form SS 40 93 07 05 at 1. Furthermore, government orders aimed at slowing the spread of the virus are not a Covered Cause of Loss under the terms of the Policy and, therefore, cannot trigger coverage.

> **a.**   **The Virus is a Cause of Plaintiff's Losses, Which Means the Virus Exclusion Applies**

By its plain terms, the Virus Exclusion applies so long as virus is **one** cause of loss; it need not be the sole or even predominant cause of loss. The Virus Exclusion provides: "Such loss or damage is excluded *regardless of any other cause or event that contributes concurrently or in any sequence to the loss*." Ex. A, Form SS 40 93 07 05 at 1 (emphasis added). This language is referred to as an anti-concurrent causation clause, and its purpose is to provide certainty to the parties as to coverage when there are multiple alleged causes of a loss. So long as one contributing cause is excluded, this anti-concurrent causation language ensures the loss is not covered.

Here, the virus is the only cause of Plaintiff's loss, but even if the virus were just *a* cause of the loss, the Virus Exclusion would still bar coverage because of the anti-concurrent causation clause. *See Front Row Theatre, Inc. v. Am. Mfr's. Mut. Ins. Companies*, 18 F.3d 1343, 1347 (6th Cir. 1994) (anti-concurrent causation clause bars coverage where "damage to an insured's property is caused by both a covered and an excluded event"); *Hartman v. Erie Ins. Co.*, 85 N.E.3d 454, 465 (Ohio Ct. App. 2017) ("Because there was an anti-concurrent causation clause in the policy before us, we find coverage was excluded when there was more than one cause for the loss and one of the causes was an excluded cause").

Indeed, plaintiffs across the country have attempted to skirt virus exclusions and their anti-concurrent causation language by pointing to the government orders as the purported cause of their loss, and courts have repeatedly and resoundingly rejected this argument. *See, e.g., Mikmar*, 2021 WL 615304, at *10 ("Plaintiffs argue that the exclusion only applies where a virus alone causes a

loss.  But the reach of the exclusion to losses a virus indirectly causes does not require parsing the causal chain legally and obviates the need for factual development."); *Moody v. Hartford Fin. Serv. Group, Inc.*, No. 20-2856, 2021 WL 135897, at *9 (E.D. Pa. Jan. 14, 2021) ("Even if the virus was not the direct cause of its losses, it was at least an indirect cause, which is sufficient to bar coverage under the Virus Exclusion clause."); *Ultimate Hearing Solutions II, LLC v. Twin City Fire Ins. Co.*, No. 20-2401, 2021 WL 131556, at *10 (E.D. Pa. Jan. 14, 2021) ("By the terms of the Policy, the virus only needs to be one cause of loss, not the sole cause of loss, for the exclusion to bar coverage."); *Nahmad,* 2020 WL 6392841, at *9 ("[T]he Court does not agree that [p]laintiffs' distinction between the government orders versus the virus as the immediate cause of their losses avoids the plain language of the virus exclusion.  Even if COVID-19 is not a direct cause of their losses, the Complaint's allegations demonstrate that the government's civil orders were specifically enacted to address COVID-19 activity in Florida."); *LJ New Haven*, 2020 WL 7495622, at *5 (virus "is surely an indirect cause" of loss).[5]

Because the coronavirus undisputedly is *a* cause of Plaintiff's losses, there is no coverage under the Policy.

        **b.**       **Governmental Orders Aimed at Slowing the Spread of the Virus Are Not a Covered Cause of Loss**

Even if the Court were to adopt Plaintiff's apparent view that the orders are the cause of loss, that would not save Plaintiff's claims.  Governmental orders do not constitute a Covered Cause of Loss and, therefore, cannot trigger coverage under the Policy.

---

[5] *See also, e.g.*, *N&S Restaurant, LLC v. Cumberland Mut. Fire Ins. Co.*, No. 20-05289, 2020 WL 6501722, at *3 (D.N.J. Nov. 5, 2020) ("The anti-concurrent clause specifically states that loss caused directly *or indirectly* by a virus is excluded.  This is true regardless of any other event *in any other sequence* that contributes to the loss.") (emphases in original); *Kenneth Seifert d/b/a The Hair Place v. IMT Ins. Co.*, No. 20-cv-1102 (JRT/DTS), 2020 WL 6120002, at *4 (D. Minn. Oct. 16, 2020) ("Thus, the virus exclusion would extend 'to all losses where a virus is a part of the causal chain.'" (citation omitted)).

Under all forms of coverage sought, Plaintiff must establish that any loss or damage was caused by a "Covered Cause of Loss," which the Policy defines as "RISKS OF DIRECT PHYSICAL LOSS unless . . . Excluded in Section B., EXCLUSIONS" or otherwise limited by the Policy.  Ex. A, Form SS 00 07 07 05 at 2.  Virus does not meet this definition because it is "Excluded in Section B., Exclusions."  *See, e.g., Border Chicken AZ LLC v. Nationwide Mut. Ins. Co.*, No. CV-20-00785-PHX-JJT, 2020 WL 6827742, at *4 (D. Ariz. Nov. 20, 2020); *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos*., No. 2:20-CV-05663-VAP-DFMx, 2020 WL 6440037, at *5-6 (C.D. Cal. Oct. 27, 2020); *Martinez*, 483 F. Supp. 3d at 1191-92.

The COVID-19 orders also do not meet the definition of "Covered Cause of Loss" because they are not a "risk of direct physical loss" to property.  Rather, they are measures aimed at slowing the person-to-person spread of the virus.  As one court observed in a coronavirus business interruption case:  "At bottom, the Closure Orders cannot possibly be the same as the Covered Cause of Loss." *Franklin EWC*, 488 F. Supp. 3d at 908.  In addressing such an argument, the court recognized that the policy contains a separate coverage for civil authority orders that has its own requirements for coverage.  The court explained "the Civil Authority Provision does not create coverage, it 'extends' coverage when the [government] orders are issued 'as the direct result of a Covered Cause of Loss to property in the immediate area' of the insured property." *Id.*  Noting the circular nature of the insured's argument, the court found there were no allegations to "support[] an inference that the Closure Orders were issued as a direct result of the Closure Orders (Plaintiffs' theory of the Covered Cause of Loss) and that the Closure Orders themselves caused damage to neighboring property." *Id.*

Other courts have agreed that government orders aimed at slowing the spread of COVID-19 do not constitute a "risk of direct physical loss" to property.  *See, e.g., Moody*, 2021 WL

135897, at *6 n.7 ("Said another way, a civil authority order cannot itself be a 'Covered Cause of Loss' that causes loss of or damage to [plaintiff's] property if the same order is required to be 'the direct result of a Covered Cause of Loss' for purposes of Civil Authority coverage."); *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, Nos. 20-cv-1889 & 20-cv-1869, 2020 WL 7395153, at *6 (E.D. Pa. Dec. 17, 2020) ("[T]he shutdown orders cannot constitute a covered cause of loss under either the civil authority or business income provision."); *cf. Prime Alliance Grp., Ltd. v. Hartford Fire Ins. Co.*, No. 06-22535-CIV-UNGARO, 2007 WL 9703576, at *1, *4 (S.D. Fla. Oct. 19, 2007) ("The order of civil authority cannot in any reasonable manner be construed as a 'peril,'" where "perils insured against" included "all risk of direct physical loss.").

Simply put, the orders are governmental measures taken to mitigate the person-to-person spread of the virus and pose no risk of loss to property. Thus, there is only one peril that caused Plaintiff's loss — the coronavirus — and it is excluded. Accordingly, there is no Covered Cause of Loss.

### 2. Regulatory Estoppel Does Not Impact the Applicability of the Virus Exclusion

Plaintiff further attempts to circumvent the Virus Exclusion by alleging that the doctrine of regulatory estoppel negates its application here. Compl. ¶ 51. Specifically, Plaintiff alleges that the approval of the Virus Exclusion was procured as a result of false statements by the Insurance Service Office ("ISO") and the American Association of Insurance Services ("AAIS") to regulators, and the Virus Exclusion is somehow inapplicable as a result. *See id.* ¶¶ 52-58.

But no Ohio court has recognized this regulatory estoppel theory. In the lone instance that an Ohio court has considered it, that court declined to apply regulatory estoppel because the policy exclusion at issue was clear and unambiguous. *See M & M Metals Int'l., Inc. v. Cont'l Cas. Co.*, Nos. C-060551, C-060571, 2008 WL 683970, at *5 (Ohio Ct. App. Mar. 14, 2008) (affirming

denial of plaintiff's motion for partial summary judgment on regulatory estoppel grounds because "Ohio courts have rejected the argument that extrinsic evidence is permitted to vary the terms of a clear and unambiguous . . . exclusion").

Nor do Connecticut courts recognize the doctrine.  *See Buell Indus., Inc. v. Greater N. Y. Mut. Ins. Co.*, 791 A.2d 489, 502 (Conn. 2002) (declining to apply regulatory estoppel in its interpretation of the word "sudden" in a pollution exclusion because, *inter alia*, "the doctrine has been rejected by several courts," and "regulatory estoppel appears to be another attempt to examine extrinsic evidence on a term that we already have concluded is clear and unambiguous"); *Linemaster Switch Corp. v. Aetna Life & Cas. Corp.*, No. CV91-0396432S, 1995 WL 462270, at *32 (Conn. Super. Ct. July 25, 1995) ("What is in effect a regulatory estoppel doctrine has not been explicitly recognized in our state.").

A plethora of courts have already decided regulatory estoppel claims with respect to virus exclusions — including the one here — are meritless.  *See, e.g.*, *Levy*, 2021 WL 598818, at *7 (addressing same virus exclusion and explaining that "federal courts applying the laws of a state that recognizes regulatory estoppel have repeatedly declined to apply the doctrine in COVID-19 insurance-coverage cases."); *Border Chicken AZ*, 2020 WL 6827742, at *5 (finding regulatory estoppel argument "unconvincing" because "Arizona courts have not recognized the theory" and, even it did, the facts alleged do not support a finding of estoppel); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 20-cv-04434-JSC, 2020 WL 7342687, at *3 (N.D. Cal. Dec. 14, 2020) (addressing same virus exclusion and concluding that "Plaintiffs' regulatory estoppel argument does not save their coverage claim from the Virus Exclusion. California courts reject the regulatory estoppel doctrine."); *1210 McGavock St. Hosp. Partners, LLC v. Admiral Indem. Co.*, No. 3:20-CV-694, 2020 WL 7641184, at *4, *6 (M.D. Tenn. Dec. 23, 2020) ("no Tennessee court has

17

adopted the doctrine of regulatory estoppel" and "extrinsic evidence may not be introduced to modify the terms of an unambiguous contract.").[6]

Moreover, even if regulatory estoppel were recognized in Ohio or Connecticut (it is not), it would not help Plaintiff.  First, the purported misrepresentations forming the basis of the regulatory estoppel theory were allegedly made in 2006.  *See* Compl. ¶¶ 54-56.  But the Virus Exclusion in Plaintiff's policy is copyrighted in *2005* and is a Hartford form, not an ISO or AAIS form.  *See* Ex. A, Form SS 40 93 07 05 (with "07 05" representing the month and year of a form's edition, here, July 2005).  Purported statements made to a regulator relating to an exclusion not contained in the Policy cannot possibly have any bearing on this dispute.

Second, Ohio law requires a party asserting estoppel to establish that it has "relied on conduct of an adversary in such a manner as to change his position for the worse." *Ohio State Bd. of Pharmacy v. Frantz*, 555 N.E.2d 630, 633 (Ohio 1990).  Similarly, for a party to assert estoppel under Connecticut law, "the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." *Union Carbide Corp. v. City of Danbury*, 778 A.2d 204, 209 (Conn. 2001) (citation and internal quotation marks omitted).  Plaintiff has made no such showing here.  The alleged statements at issue here were made by industry groups, not Twin City.  Thus there is no conduct of Twin City at issue.  *See, e.g.*, *ATCM Optical, Inc. v. Twin City Fire Ins. Co.*, No. 20-4238, 2021

---

[6] Indeed, even in states where the doctrine is recognized, courts have refused to apply it to COVID-19 business interruption claims.  *See, e.g.*, *Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, No. 20-3198, 2020 WL 6545893, at *5 (E.D. Pa. Nov. 6, 2020) ("Defendant takes the same position here as the ISO . . . did by arguing that the virus exclusion eliminates coverage for any damage or loss as a result of the causes enumerated therein. Since defendant does not take a contradictory position to the one made to regulatory agencies, the doctrine of regulatory estoppel does not apply to this action."); *Delaware Valley Plumbing Supply, Inc. v. Merchants Mut. Ins. Co.*, No. 120CV08257NLHKMW, 2021 WL 567994, at *6 (D.N.J. Feb. 16, 2021) ("Plaintiffs have entirely failed to point to a similar misrepresentation regarding the scope of the Virus Exclusion, and to demonstrate how the interpretation advanced by Defendant is inconsistent with prior representations made by the insurance industry to regulators.").

WL 131282, at *8 (E.D. Pa. Jan. 14, 2021) ("[The plaintiff] fails to satisfy the first element of regulatory estoppel because it has not averred any statements Twin City made to any regulatory agency."), *appeal filed*, 21-1107 (3d Cir. Jan. 21, 2021); *Moody*, 2021 WL 135897, at *10 ("But the Complaint does not allege that Twin City itself made any specific statements or that the ISO presented on Twin City's behalf.").

Furthermore, the statements that Plaintiff claims were made by industry groups to regulators are not inconsistent with Twin City's position in this litigation. Plaintiff alleges insurance industry groups told the regulators that the Virus Exclusion was being adopted to make clear that the property policies of insurers did not cover virus-related losses. Compl. ¶¶ 53-55. This is exactly the position that Twin City is taking in this litigation. Thus, there is no inconsistency. *See Levy*, 2021 WL 598818, at *7 ("Plaintiffs have not pleaded any inconsistency with the statements made by the insurance industry groups and the position Defendants take in this case."); *Brian Handel*, 2020 WL 6545893, at *5 (same); *Delaware Valley*, 2021 WL 567994, at *6 (same).

Simply put, the doctrine of regulatory estoppel does not apply in Ohio or Connecticut and, even if it did, Plaintiff has not alleged any facts sufficient to satisfy the requirements.

### B. Plaintiff Has Not Alleged "Direct Physical Loss" to Property

Even if the Virus Exclusion were not applicable (it is), Plaintiff has not stated a plausible claim for Business Income or Extra Expense coverage. Coverage under these provisions is triggered only where there is "direct physical loss of or physical damage to" property at the premises insured by the Policy, and only during a "period of restoration". Ex. A, Form SS 00 07 07 05 at 10. Plaintiff has not sufficiently alleged any such "physical loss" or "physical damage" to property at the premises insured by the Policy.

Rather, Plaintiff alleges pure economic losses. In its Complaint, Plaintiff asserts that "[a]s

a result of the [COVID-19 government closure] orders governing Plaintiff, the Covered Property closed on March 23, 2020 and remained completely closed until May 12, 2020 at which time it has been able to resume significantly limited operations, which are well short of Plaintiff's normal operating environment. Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy."  Compl. ¶¶ 40-41.  Economic losses in the absence of physical alteration to property are not covered.

In order to find "direct physical loss," Ohio law requires a tangible, material change to property, such as by a physical force.  Accordingly, the majority of Ohio federal courts to consider the question have held that the COVID-19 pandemic and related governmental orders did not cause direct physical loss or damage to a policyholder's property.  *See, e.g.*, *Brunswick Panini's*, 2021 WL 663675, at *7-8 ("Consequently, the meaning of 'physical' necessarily excludes that which is intangible or incorporeal . . . the Court finds that Plaintiffs' claim for loss of full use of their premises and for business interruption is precluded under the Zurich Policy."); *Ceres Enters.*, 2021 WL 634982, at *6 ("Plaintiff was not physically, tangibly, materially deprived of their property, and therefore did not suffer a 'physical loss.'"); *Santo's Italian Cafe*, 2020 WL 7490095, at *9 (no direct physical loss where policyholder did not "allege that any physical force ha[d] altered or otherwise affected the property" as "[t]he Closure Orders are not a physical intrusion on [the insured's] property").[7]

That business income coverage extends through a "period of restoration," which ends when the property at the premises "should be repaired, rebuilt or replaced with reasonable speed and

---

[7] *See also Mikmar*, 2021 WL 615304, at *5 ("'[P]hysical loss of' property means material, perceptible destruction or deprivation of possession. 'Physical damage to' property means material, perceptible harm.  In other words, the phrase intends a tangible loss of or harm to the insured property, in whole or in part."); *Family Tacos*, 2021 WL 615307, at *5 (holding the same); *Equity Planning Corp.*, 2021 WL 766802, at *8-16; *Dakota Girls, LLC v. Philadelphia Indem. Co.*, No. 2:20-cv-2035, 2021 WL 858489, at *5-7 (S.D. Ohio Mar. 8, 2021); *Bridal Expressions LLC v. Owners Ins. Co.*, No. 1:20 CV 833, 2021 WL 1232399, at *4-7 (N.D. Ohio Mar. 23, 2021).

20

similar quality" or when business is resumed at a new, permanent location (*see* Ex. A, Form SS 00 07 07 05 at 24), further confirms that coverage extends only to property that has suffered the type of physical damage that would need repairing, rebuilding, replacing, or permanent relocation in the first place.[8]  *See Santo's Italian Cafe*, 2020 WL 7490095, at *10 ("[C]onstruing 'direct physical loss' or 'direct physical damage' to cover intangible losses, such as the economic losses Santo's seeks to cover, would render large parts of the 'period of restoration' definition nonsensical because intangible losses cannot be repaired, rebuilt, or replaced"); *Dakota Girls*, 2021 WL 858489, at *6 ("To interpret the Policies as requiring anything other than that the covered premises be destroyed, ruined, or otherwise materially or perceptibly altered would make the Period of Restoration definition nonsensical."); *Mikmar*, 2021 WL 615304, at *5 ("Reading 'direct physical loss of or damage to' property to include loss of intended use, as Plaintiffs urge, would render the Period of Restoration nonsensical or meaningless because no repair, rebuilding, or replacement of the covered property will occur.  Under basic principles of contract interpretation, the Court may not give this language such a reading."); *Ceres Enters.*, 2021 WL 634982, at *5 (same); *Family Tacos*, 2021 WL 615307, at *5 (same).[9]

---

[8] Well before COVID-19, courts ruled that this language requires loss to be physical.  *See, e.g.*, *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014) ("The words 'repair' and 'replace' contemplate physical damage to the insured premises as opposed to the loss of use of it."); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature."); *Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Corp.*, 486 S.E.2d 249, 251 (N.C. Ct. App. 1997) ("The business interruption clause does not cover all business interruption losses, but only those losses requiring repair, rebuilding, or replacement.").

[9] Courts outside Ohio are in accord.  *See, e.g.*, *Tralom, Inc. v. Beazley USA Services, Inc.*, No. CV 20-8344-JFW(RAOx), 2020 WL 8620224, at *3 (C.D. Cal. Dec. 29, 2020) ("The 'repair, rebuilt, or replaced' requirement shows that the loss of or damage to property be physical in nature."); *Kevin Barry Fine Art Associates v. Sentinel Ins. Co.*, 20-cv-04783-SK, 2021 WL 141180, at *5 (N.D. Cal. Jan. 13, 2021) (same); *Levy*, 2021 WL 598818, at *11 ("[C]onstruing 'direct physical loss of' to cover mere loss of use would render the 'period of restoration' definition superfluous because such losses cannot be 'rebuilt, repaired, or replaced.'"); *Colgan v. Sentinel Ins. Co., Ltd.*, No. 20-cv-04780-HSG, 2021 WL 472964, at *3 (N.D. Cal. Jan. 26, 2021) ("Plaintiff's allegations of temporary loss of access and use, which claim no loss requiring repair, rebuilding, or replacement, are plainly insufficient."), *appeal filed*, No. 21-15332 (9th Cir. Feb. 25, 2021).

While an Ohio federal district court found the phrase "direct physical loss" to be ambiguous and construed it against the insurer, *see Henderson Road Restaurant Systems, Inc. v. Zurich American Insurance Co.,* No. 1:20 CV 1239, 2021 WL 168422 (N.D. Ohio Jan. 19, 2021), Ohio courts in subsequent decisions have confirmed that *Henderson Road* is a clear outlier. [10] *See, e.g.,* *Family Tacos*, 2021 WL 615307, at *11 ("After careful review of the plain and ordinary meaning of the policy language at issue in this case, the Court is not persuaded by the reasoning in *Henderson Road* or that decision's determination that the policy language at issue is ambiguous. Additionally, reading the policy as the *Henderson Road* Court does creates a host of potential practical and legal problems."); *Ceres Enters.*, 2021 WL 634982, at *11 ("[T]he Court is not persuaded by the reasoning in *Henderson Road* or that decision's determination that the policy language at issue is ambiguous."); *Mikmar*, 2021 WL 615304, at *10 (same). [11]

In any event, the policy in *Henderson Road* is distinguishable from that here in two material respects.  First, the definition of "covered cause of loss" under the policy in *Henderson* did ***not*** include a direct physical loss requirement.  Rather, the policy defined "covered cause of loss" as a "fortuitous cause or event, not otherwise excluded" and court determined the state emergency orders could constitute a "fortuitous cause or event."  2021 WL 168422, at *13.  Second, the *Henderson* policy lacked a "period of restoration" definition that included the repair, rebuilding, and/or replacement of property — a key definition courts have relied upon to support their

---

[10] One Ohio trial court also concluded that a policy containing the phrase "direct physical loss or damage to property" was ambiguous.  *See McKinley Dev. Leasing Co. v. Westfield Ins. Co.*, No. 2020 CV 00815, 2021 WL 506266 (Ohio Com. Pl. Stark Cty. Feb. 9, 2021).  However, the *Family Tacos* court determined that this conclusion was based on *Henderson Road* as well as the incorrect premise that a phrase is ambiguous "because the parties disagree over its meaning or offer reasonable, competing interpretations," and therefore regarded *McKinley* "as resting on legal error and discount[ed] its weight as persuasive authority accordingly."  2021 WL 615307, at *11.

[11] Courts outside Ohio have likewise declined to follow *Henderson*.  *See, e.g.*, *Protégé Rest. Partners LLC v. Sentinel Ins. Co.*, Ltd., No. 20-cv-03674-BLF, 2021 WL 428653, at *5 (N.D. Cal. Feb. 8, 2021) (rejecting *Henderson* as unpersuasive); *Kahn v. Pa. Nat'l Mut. Cas. Ins. Co.*, No. 1:20-cv-781, 2021 WL 422607, at *7 (M.D. Pa. Feb. 8, 2021) (refusing to follow *Henderson*).

conclusion that a physical alteration to property is required to demonstrate direct physical loss. *See supra* at 21.

Likewise, under Connecticut law, "direct physical loss" requires a "physical, tangible alteration to . . . property." *Mazzarella v. Amica Mut. Ins. Co.*, No. 3:17-CV-598 (SRU), 2018 WL 780217, at *3 (D. Conn. Feb. 8, 2018) (quoting *England v. Amica Mut. Ins. Co.*, No. 3:16-cv-1951 (MPS), 2017 WL 3996394 (D. Conn. Sept. 11, 2017)), *aff'd on other grounds*, 774 Fed. App'x 14 (2d Cir. 2019) (unpublished summary order); *see also England*, 2017 WL 3996394, at *8 (holding that a chemical reaction, "absent any physical manifestation in the Property marking a change to an unsatisfactory state, is not a 'direct physical loss'"). Accordingly, a court in the Northern District of Illinois applying Connecticut law held that the plaintiff's loss of use of its property due to COVID-19 closure orders did not constitute "direct physical loss," because "'physical loss' refers to a deprivation caused by a tangible or concrete change in or to the thing that is lost," and the COVID-19 closure orders were "hardly a concrete or tangible" loss of property. *Chief of Staff LLC v. Hiscox Ins. Co.*, No. 1:20-cv-03169, 2021 WL 1208969, at *2 (N.D. Ill. Mar. 31, 2021). The policyholder's proposed interpretation "would violate the surplusage-avoidance principle by reading the word 'physical' out of the [policy]"; and was also "difficult to square with the [policy's] 'period of restoration' language," because "[i]f there has been no physical alteration to the condition or location of the property, there is nothing to 'repair[], rebuil[d] or replace[].'" *Id.* at *3.

In addition to *Brunswick Panini's*, *Ceres Enterprises*, *Mikmar*, *Family Tacos*, *Santo's Italian Cafe*, *Equity Planning*, *Dakota Girls*, and *Bridal Expressions* — all of which were dismissed similar claims based on Ohio law due to a lack of direct physical loss — courts across the country have agreed that business interruption losses resulting from COVID-19 do not

constitute "direct physical loss." *See, e.g.*, *Nahmad*, 2020 WL 6392841, at \*5-8 (economic damages alone without corresponding physical harms to the Covered Property are not covered); *Real Hospitality, LLC v. Travelers Cas. Ins. Co. of Am.*, No. 20-cv-00087-KS-MTP, 2020 WL 6503405, at \*4-8 (S.D. Miss. Nov. 4, 2020) (no "direct physical loss of or damage to property" where plaintiff alleged closure of premises and suspension of business operations due to COVID-19 pandemic and government orders).[12]

Here, Plaintiff alleges no fact establishing direct physical loss to property.  It does not allege any physical damage or alteration to any property.  Plaintiff alleges in conclusory fashion that it suffered "direct physical loss or damage due to . . . governmental orders[] mandating that Plaintiff discontinue its primary use of the Covered Property as a clothing store," as well as "the COVID-19 pandemic and the ubiquitous nature of the COVID-19 virus . . . ."  Compl. ¶¶ 44-45.  In making these allegations, Plaintiff apparently relies on the premise that "[p]hysical loss of, or physical damage to, property may be reasonably interpreted to occur when a covered cause of loss threatens or renders property unusable or unsuitable for its intended purpose or unsafe for normal human occupancy and/or continued use."  *Id.* ¶ 21.  But the fact that COVID-19 governmental orders have limited Plaintiff's business operations does not constitute direct physical loss of or damage to property, as courts across the country have held.  Indeed, under Plaintiff's definition, every business in this country would have suffered a direct physical loss — a plainly absurd result.

---

[12] *See also Handel*, 2020 WL 6545893, at \*3; *Uncork & Create LLC v. Cincinnati Ins. Co.*, No. 2:20-cv-00401, 2020 WL 6436948, at \*5 (S.D. W.Va. Nov. 2, 2020); *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, No. 1:20-CV-275-JB-B, 2020 WL 6163142, at \*7 (S.D. Ala. Oct. 21, 2020); *Seifert*, 2020 WL 6120002, at \*3-4 n.5; *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, No. 1:20-cv-2939-TWT, 2020 WL 5938755, at \*4 (N.D. Ga. Oct. 6, 2020), *appeal filed,* No. 20-14156 (11th Cir. Nov. 4, 2020); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London*, No. 8:20-cv-1605-T-30AEP, 2020 WL 5791583, at \*3 (M.D. Fla. Sept. 28, 2020); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 WL 5630465, at \*2 (N.D. Ill. Sept. 21, 2020); *Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, 484 F. Supp. 3d 492, 499-502 (E.D. Mich. 2020); *Diesel Barbershop*, 479 F. Supp. 3d at 359-60; *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-CIV, 2020 WL 5051581, at \*8 (S.D. Fla. Aug. 26, 2020); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, No. 4:20-CV-222-CRW-SBJ, 2020 WL 5820552, at \*1 (S.D. Iowa Sept. 29, 2020), *appeal filed*, No. 20-3211 (8th Cir. Oct. 21, 2020).

Like the plaintiffs in *Brunswick Panini's*, *Ceres Enterprises*, *Mikmar*, *Dakota Girls*, *Family Tacos*, and *Santo's Italian Café*, Plaintiff has nothing to fix or replace to regain occupancy of its premises.

Indeed, the Complaint does not allege any facts indicating that COVID-19 was in fact present at Plaintiff's business; instead, these allegations, at most, refer to the general presence of COVID-19 in Ohio.  Plaintiff cannot just baldly assert that COVID-19 harmed its business without actually demonstrating that COVID-19 interacted with its property.  This inference is exactly the type of conclusory pleading that the Supreme Court rejected in *Twombly* and *Iqbal*.   Numerous courts have already found this type of allegation insufficient to allege direct physical loss or damage under a property insurance policy in the context of COVID-19 business interruption claims.  *See, e.g.*, *W. Coast Hotel Mgmt.*, 2020 WL 6440037, at *4 (disregarding conclusory allegations of "direct physical loss of or damage" to property under *Iqbal*); *Uncork & Create* , 2020 WL 6436948, at *5 (criticizing conclusory allegations as to the presence of COVID-19 on property without allegations of employees or patrons with infections traced to the business).[13]

Furthermore, even if there were any allegations of the presence of coronavirus on Plaintiff's property (there are not), it would not constitute direct physical loss because coronavirus can be eliminated through the passage of time or the use of a disinfectant.  Contaminants that can be readily removed by cleaning do not cause direct physical loss or damage.  *See, e.g.*, *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018), *aff'd*, 823 F. App'x 868 (11th Cir. 2020); *SAS Int'l Ltd. v. General Star Indem. Co.*, No. CV 20-11864-

---

[13] *See also Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, No. 20-cv-03750-WHO, 2020 WL 6562332, at *4 (N.D. Cal. Nov. 9, 2020) (agreeing with insurer that allegations of "the 'mere threat' of exposure" to COVID-19 were "categorically insufficient to trigger coverage as a direct physical loss of or damage to [plaintiff's] property"); *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, No. 20-cv-2211-JAR-GEB, 2020 WL 7078735, at *8 (D. Kan. Dec. 3, 2020) ("The Court finds that Plaintiff's allegation that the virus likely contaminated its property fails to raise a 'right of relief above the speculative level.' The health data and studies described in the Complaint do not support the conclusory assertion that the virus was present on the surfaces of Plaintiff's property, causing its losses.") (citation omitted), *appeal filed*, No. 21-3000 (10th Cir. Jan. 4, 2021).

RGS, 2021 WL 664043, at *4 (D. Mass. Feb. 19, 2021) ("COVID-19 is imperceptible; it does not endure beyond a brief passage of time or a proper cleaning, let alone render the property permanently uninhabitable."), *appeal filed*, No. 21-1219 (1st Cir. Mar. 24, 2021); *Unmasked Mgmt., Inc. v. Century-Nat'l Ins. Co.*, No. 3:20-CV-01129-H-MDD, 2021 WL 242979, at *6 (S.D. Cal. Jan. 22, 2021) (because "disinfectant and other cleaning methods can be used to remove or lessen the virus from surfaces" "[t]he presence of COVID-19, therefore, could not have 'damaged' Plaintiffs' property 'within the common understanding of that term.'") (internal citation omitted), *appeal filed*, No. 21-55090 (9th Cir. Feb. 5, 2021); *Uncork & Create*, 2020 WL 6436948, at *5 ("[E]ven when present, COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant."); *Promotional Headwear*, 2020 WL 7078735, at *8 ("[R]outine cleaning and disinfecting can eliminate the virus on surfaces."); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, No. 1:20-CV-665-RP, 2021 WL 972878, at *8 (W.D. Tex. Jan. 21, 2021) ("Even assuming that the virus that causes COVID-19 was present at Plaintiffs' properties, it would not constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated.").

## C.        Plaintiff Cannot State a Claim for Civil Authority Coverage

Although the Virus Exclusion and the absence of direct physical loss or damage to property are each independently fatal to Plaintiff's claims, Plaintiff's claim for coverage under the Policy's Civil Authority provision fails for additional reasons.  Civil Authority coverage pays for Plaintiff's "actual loss of Business Income" sustained during a 30-day period "when access to [its] 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of [its] 'scheduled premises'," *i.e.*, direct physical loss to property in the immediate area.  Ex. A, Form SS 00 07 07 05 at 11.  Plaintiff cannot meet any of these requirements: (1) Plaintiff does not allege a Covered Cause of Loss (because virus-

related losses are excluded), nor can it demonstrate harm to any property; (2) Plaintiff does not allege that it was specifically prohibited from accessing its business premises; and (3) the governmental orders were issued to address the spread of coronavirus, not property damage or loss.

First, as discussed above, Plaintiff has not alleged a Covered Cause of Loss because losses caused directly or indirectly by a virus are excluded and, therefore, outside the definition of Covered Cause of Loss.  Further, Plaintiff has not alleged any "direct physical loss" to any property in the immediate area of the insured property.  *See, e.g., Ceres Enters.*, 2021 WL 634982, at *9 (finding that the plaintiff "d[id] not allege damage to 'property other than at the described premises'" and was not entitled to civil authority coverage); *Mikmar*, 2021 WL 615304, at *9 (finding the same); *Family Tacos*, 2021 WL 615307, at *9 (finding the same); *Santo's Italian Café*, 2020 WL 7490095, at *12 ("[T]he Civil Authority provision requires that Santo's identify a building *other* than its own that sustained direct physical loss.").[14]  That omission alone is fatal to any claim for civil authority coverage.

Second, Plaintiff has failed to show "access" to its property was "specifically prohibited by order of a civil authority."  Plaintiff alleges that the governmental orders it references in the Complaint required Plaintiff to temporarily close its clothing store as a non-essential business from March 23, 2020 to May 12, 2020 and thereafter resume "significantly limited operations."  *See* Compl. ¶ 40.  The Complaint then asserts in conclusory fashion that "the ubiquitous nature of the

---

[14] *See also, e.g., Nahmad*, 2020 WL 6392841, at *8 ("The Complaint alleges no physical harm to any properties in the immediate area, only suspensions and closures in general due to government orders."); *Robert W. Fountain, Inc. v. Citizens Ins. Co.*, No. 20-cv-05441-CRB, 2020 WL 7247207, at *4 n.2 (N.D. Cal. Dec. 9, 2020) ("The Complaint here does not implicate a Covered Cause of Loss . . . nor does it allege that there was damage to a property within one mile of [the policyholder's] property."), *appeal filed* , No. 21-15053 (9th Cir. Jan. 11, 2021); *10E, LLC v. Travelers Indem. Co. of Conn.*, 483 F. Supp. 3d 828, 837 (C.D. Cal. 2020) ("Plaintiff does not allege actual cases of 'direct physical loss of or damage to property' at other locations").

COVID-19 virus caused direct physical loss of or damage to property other than Plaintiff's Covered Property, and such loss or damage resulted in an 'order by civil authority' prohibiting access to Plaintiff's Covered Property . . . . " *Id.* ¶ 46; *see also id.* ¶ 75. But far from prohibiting access, the very governmental orders cited in the Complaint expressly permitted non-essential businesses to continue "Minimum Basic Operations," such as activities necessary to maintain the business's inventory and physical plant and to ensure security.[15] Ohio courts have recognized that government action does not "prohibit" access when it renders a policyholder's premises only less accessible. *See Ceres Enters.*, 2021 WL 634982, at *9 (finding that the plaintiff "[did] not allege[] it was completely 'prohibited' from accessing the properties, but only that the virus and government orders limited its use of the property," and was not entitled to civil authority coverage); *Mikmar*, 2021 WL 615304, at *9 (finding the same); *Family Tacos*, 2021 WL 615307, at *9 (finding the same); *Santo's Italian Cafe*, 2020 WL 7490095, at *13 ("In other words, while the State's Closure Orders prevented Santo's from conducting dine-in operations—Santo's primary source of income—the Closure Orders did not prevent Santo's from accessing its premises altogether."). Courts across the country are in accord.[16] Again, this is fatal to Plaintiff's claim for

---

[15]  Ohio Dep't of Health, Director's Stay at Home Order (Mar. 22, 2020), at 1, https://content.govdelivery.com/attachments/OHOOD/2020/03/22/file_attachments/1407840/Stay%20Home%20Order.pdf.

[16]  *See, e.g.*, *Michael Cetta, Inc. v. Admiral Indemnity Co.*, No. 20 Civ. 4612 (JPC), 2020 WL 7321405, at *12 (S.D.N.Y. Dec. 11, 2020) (closure orders limited restaurants like plaintiff's to serve "take-out and delivery" items; the fact that plaintiff "could have continued to operate its restaurant in some capacity is fatal to [its] claims for civil authority coverage"), *appeal filed*, No. 21-57 (2d Cir. Jan. 11, 2021); *Nahmad*, 2020 WL 6392841, at *9 (mere restriction of access to plaintiffs' dental practice for essential medical services "does not trigger coverage under the [p]olicy's Civil Authority provision"); *Henry's La. Grill*, 2020 WL 5938755, at *6 (government COVID-19 order had "no substantive provisions limiting access to private businesses or their operations"); *Sandy Point Dental*, 2020 WL 5630465, at *3 (finding that government COVID-19 order did not prohibit access). These COVID-19 decisions are consistent with long-established precedent on civil authority coverage that government action does not "prohibit" access when it renders a policyholder's premises less accessible. Prohibition of access must be a complete prohibition. *See, e.g.*, *S. Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140-41 (10th Cir. 2004); *Commstop v. Travelers Indem. Co. of Conn.*, No. 11-1257, 2012 WL 1883461, at *9 (W.D. La. May 17, 2012); *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-cv-02391, 2010 WL 2696782, at *4-5 (M.D. Pa. July 6, 2010); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. 06-770-C, 2007 WL 2489711, at *3-6 (M.D. La. Aug. 29, 2007).

civil authority coverage.

Third, the governmental orders identified in the Complaint were issued to prevent or limit the *future* spread of the coronavirus *to people*, not as a result of existing direct physical loss or direct physical damage to property caused by the virus.  *See, e.g.*, *Kevin Barry* , 2021 WL 141180, at \*6 (orders not issued "as a direct result of" property loss but rather "were issued to prevent the spread of COVID-19 to people"); *Roy H. Johnson, DDS v. Hartford Fin. Servs. Grp., Inc.*, No. 1:20-cv-02000-SDG, 2021 WL 37573, at \*7 (N.D. Ga. Jan. 4, 2021) ("As Defendants' counsel aptly noted during oral argument, COVID-19 hurts people, not property.").  Courts routinely reject civil authority claims where governmental orders are aimed at fear of future harm, not existing property loss or damage.  *See, e.g., Mudpie, Inc. v. Travelers Cas. Ins. Co.*, No. 20-cv-03213-JST, 2020 WL 5525171, at \*7 (N.D. Cal. Sept. 14, 2020) (COVID-19 government closure orders "were preventative" and plaintiff's allegations failed to "establish the requisite causal link between prior property damage and the government's closure order"); *Kirsch v. Aspen Am. Ins. Co.*, No. 20-11930, 2020 WL 7338570, at \*7 (E.D. Mich. Dec. 14, 2020) ("Plaintiff has failed to establish that the COVID-19 executive order was a direct result of damage to existing property as opposed to an attempt to curtail the virus's spread and future damage."), *appeal filed*, No. 21-1038 (6th Cir. Jan. 14, 2021).[17]  The governmental orders referenced in the Complaint were aimed at slowing the

---

[17] Again, these COVID-19 decisions are in accord with well-established law that rejects civil authority claims where the governmental orders are aimed at fear of future harm, not existing property loss or damage.  *See, e.g.*, *Syufy Enters. v. Home Ins. Co. of Indiana*, No. 94-0756 FMS, 1995 WL 129229, at \*2 (N.D. Cal. Mar. 21, 1995) (government curfew orders were imposed "to prevent 'potential' looting, rioting, and resulting property damage," not "because of damage to adjacent property"); *United Air Lines v. Ins. Co. of the State of Pa.*, 439 F.3d 128, 134 (2d Cir. 2006) (declining civil authority coverage for lost earnings stemming from shutdown of Ronald Reagan Washington National Airport after Sept. 11th, 2001 because "the government's subsequent decision to halt operations at the Airport indefinitely was based on fears of future attacks" not due to existing damage to the Pentagon); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, 440 F. Supp. 3d 520, 527 (D.S.C. 2020) ("[T]he phrase 'because of,' by its plain terms, necessitates the existence of property damage or destruction at the time the civil authority order is issued."); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-CV-3154-JEC, 2004 WL 5704715, at \*7 (N.D. Ga. Dec. 15, 2004) ("[T]he Court finds that an order . . . that is designed to prevent, protect against, or avoid future damage is not a 'direct result' of already existing property loss or damage.").

future spread of the coronavirus and are insufficient to trigger Civil Authority coverage.  For this additional reason, judgment must be entered in Twin City's favor.

### D.     Plaintiff Cannot State a Claim for Dependent Properties Coverage

Plaintiff also seeks coverage under the Policy for "Business Income from Dependent Properties."  Plaintiff alleges entitlement to this coverage by arguing that "government orders or, alternatively, the ubiquitous nature of the COVID-19 virus, caused direct physical loss of or physical damage to Plaintiff's Dependent Property" because "Plaintiff generated significant revenue from customers who worked in the geographic area surrounding Plaintiff's business" and "[t]he government shutdown orders prevented many of those customers from working, thereby greatly reducing the likelihood that they would visit and make purchases at Plaintiff's retail clothing store."  Compl. ¶¶76-77.

The Policy covers loss of business income "due to direct physical loss or physical damage at the premises of a dependent property caused by or resulting from a Covered Cause of Loss," and "Dependent Property" is defined, *inter alia*, as "property owned, leased or operated by others whom you depend on to: (a) Deliver materials or services to you or to others for your account . . . (b) Accept your products or services; (c) Manufacture your products . . . (d) Attract customers to your business premises."  Ex. A, Form SS 00 07 07 05 at 11-12.  Plaintiff fails to allege what specific property, if any, it depends on to provide services or attract customers; instead, it only suggests that customers who worked nearby Plaintiff's clothing store were no longer doing so.  Further, as discussed at length above, neither the coronavirus nor the resultant government closure orders caused "direct physical loss or damage to" any property, dependent or otherwise, as required for this type of coverage.

In considering an identical "Dependent Properties" coverage provision (in a policy issued by a Twin City affiliate) in the context of COVID-19-related losses, the Northern District of

Georgia ruled that this type of coverage did not apply because (1) the plaintiff failed to "allege the specific facts establishing [the other property] as a 'Dependent Property' under the Policy," and (2) even if it had, the plaintiff failed to "allege[] that it lost business income due to 'direct physical loss or physical damage'" because the other property had not "experienced an actual, physical change."  *See Karmel Davis & Assocs., Attorneys-At-Law, LLC v. Hartford Fin. Servs. Grp., Inc.*, No. 1:20-CV-02181-WMR, 2021 WL 420372, at *5 (N.D. Ga. Jan. 26, 2021).  The Court here should do the same.

### E.    Because There is No Coverage Under the Policy, Plaintiff's Claims Fail as a Matter of Law

Plaintiff seeks declaratory relief and a claim for breach of contract premised on coverage under the Policy.  Because there is no coverage, both claims asserted in the Complaint fail.  *See, e.g., Ceres Enters.*, 2021 WL 634982, at *12 (dismissing declaratory judgment claim and breach of contract claim, among others, because the plain language of the policy did not cover COVID-19-related losses as a matter of law); *Valls v. Allstate Ins. Co.*, No. 3:16-CV-01310 (VAB), 2017 WL 4286301, at *7 (D. Conn. Sept. 27, 2017) (dismissing declaratory relief and breach of contract claims, among others, upon finding no coverage), *aff'd*, 919 F.3d 739 (2d Cir. 2019).

## V.    CONCLUSION

For all of the foregoing reasons and others appearing in the record, Twin City respectfully requests that the Court enter judgment in Twin City's favor with respect to all claims asserted against it in the Complaint.

Dated this 7th day of April, 2021.

Respectfully submitted,

*/s/ Sarah D. Gordon*
Sarah D. Gordon
*Admitted Pro Hac Vice*
STEPTOE & JOHNSON LLP

31

1330 Connecticut Avenue, NW
Washington, DC 20036
Phone: 202-429-8005
sgordon@steptoe.com

Anthony Anscombe
*Admitted Pro Hac Vice*
STEPTOE & JOHNSON LLP
227 West Monroe Street
Suite 4700
Chicago, IL 60606
Phone: 312-577-1265
aanscombe@steptoe.com

Gerald P. Dwyer Jr.
Bar # - ct20447
Peter R. Meggers
Bar # - ct29221
Stephani A. Roman
Bar # - ct30966
ROBINSON & COLE LLP
280 Trumbull Street
Sentinel, CT 06103
Phone: 860-275-8331
gdwyer@rc.com
pmeggers@rc.com

*Attorneys for Defendant Twin City Fire
Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TWIN CITY FIRE INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS has been furnished to all counsel of record by ECF on April 7, 2021.

*/s/ Gerald P. Dwyer Jr.*
Gerald P. Dwyer Jr.